UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MARGARITA REYES, | ) No. CV 08-08097-VBK |
| | ) |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

considered the treat psychiatrist's opinion;

2. Whether the ALJ properly developed the record;

3. Whether the ALJ made proper credibility findings; and

4. Whether the ALJ properly considered the type, dosage, effectiveness and side effects of Plaintiff's medications.

(JS at 2.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ PROPERLY CONSIDERED THE OPINION OF THE TREATING PSYCHOLOGIST, AND DID NOT HAVE DUTY TO FURTHER DEVELOP THE RECORD**

Plaintiff's first issue concerns whether the ALJ properly considered the opinion of the treating psychologist, Dr. Robertson, who completed a Mental Disorder Questionnaire Form ("Questionnaire") (AR 191-195).[1]

Plaintiff's second issue concerns whether or not the ALJ had a duty to develop the record by obtaining the treatment records for 2001 through 2005 of Dr. Robertson.

Plaintiff's work history includes an incident which is the apparent genesis for the development of subsequent mental health issues. Essentially, while working in a store as a teller on September 1, 2001, she was the victim of an armed robbery, which

---

[1] Plaintiff frames Issue No. 1 as whether the treating psychiatrist's opinion was properly considered. Dr. Robertson, however, is a psychologist. (AR 195.)

2

1  included threats to kill her, being hit on the back of the head with
2  a gun, being pushed to the ground, and then being present while the
3  robbers fired six shots into a door. (AR 229.)  Plaintiff received
4  treatment from Dr. Robertson beginning in 2001. (AR 30.)  Dr.
5  Robertson continued to treat her, and completed the Questionnaire.
6  Plaintiff has quoted from Dr. Robertson's Questionnaire in the JS (see
7  JS at 3-4), and Dr. Robertson extensively described Plaintiff's
8  descriptions of suicidal ideation, anxiety, fearfulness, pressured
9  speech, depressed affect, some loose associations, hopeless distinct
10 anhedonia, and lack of any pleasure in life. (AR 192.)  Plaintiff
11 complained of poor memory and poor concentration, and that she becomes
12 overwhelmed with anxiety, panic attacks and poor concentration such
13 that her vocational rehabilitation had to be put on hold by her
14 attorney. (Id.)  Dr. Robertson noted Plaintiff's description of
15 extremely limited activities of daily living ("ADL"), such that she
16 will not leave the house except if her husband comes with her. (AR
17 193.)  Dr. Robertson reported Plaintiff's description of her limited
18 social functioning, and the psychologist noted, regarding Plaintiff's
19 concentration and ability to complete taskss, that Plaintiff found it
20 extremely difficult to understand a vocational test which Dr.
21 Robertson administered.  Dr. Robertson noted that Plaintiff could not
22 follow simple written and oral instructions which were part of the
23 test. (AR 194.)  Dr. Robertson also reported that Plaintiff was taking
24 dosages of psychotropic medications. (AR 195.)  Dr. Robertson reported
25 "very little improvement" during the five years she had seen Plaintiff
26 during treatment, and assessed a very poor to guarded prognosis. (AR
27 195.)
28     The record contains additional and significant records of mental

health examinations and treatment. Thus, Plaintiff was referred to Dr. Ho for a complete psychiatric evaluation ("CE") at the request of the Department of Social Services, on October 11, 2006. (AR 187-190.) Dr. Ho reported that Plaintiff was a "questionably reliable historian," and that she possibly exaggerated some of her answers on the mental status exam. (AR 190.) He indicated a guarded prognosis, but indicated that Plaintiff was able to make simple social, occupational and personal adjustments. He diagnosed, on Axis I, anxiety disorder, n.o.s., ruling out post-traumatic stress disorder. (AR 189.)

The ALJ also referenced the opinion of Plaintiff's treating physician, Dr. Slomin (AR 11, 228-243).[2] Dr. Slomin rendered his impression that Plaintiff should avoid stresses at work and should not work handling cash. (AR 240.) Dr. Slomin also completed a Work Function Impairment Form, in which he made the following assessments:

| WORK FUNCTION | LEVEL OF IMPAIRMENT |
|---|---|
| 1. Ability to comprehend and follow instructions. | Slight |
| 2. Ability to perform simple and repetitive tasks . | None |
| 3. Ability to maintain a work pace appropriate to a given workload. | Very Slight |
| 4. Ability to perform complex or varied tasks. | Slight/Moderate |
| 5. Ability to relate to other people beyond giving and receiving instructions. | Slight |
| 6. Ability to influence people. | Slight/Moderate |

---

[2] Dr. Slomin is a Diplomate of the American Board of Psychiatry and Neurology. (AR 243.)

4

| | |
|---|---|
| 7. Ability to make generalizations, evaluations or decisions without immediate supervision. | Slight/Moderate |
| 8. Ability to accept and carry out responsibility for direction, control and planning. | Slight/Moderate |

(AR 241.)

Finally, the ALJ referenced the testimony of Dr. Peterson, a psychologist, who served as the medical expert ("ME") at the hearing. (AR 17-60.) As the ALJ noted in his decision, Dr. Peterson testified that Plaintiff suffered from Post-Traumatic Stress Disorder ("PTSD"), and a major depressive disorder. Anxiety was part of Plaintiff's PTSD. Dr. Peterson believed that Plaintiff has been treated by Dr. Peterson for five years without success.[3] Dr. Peterson noted that Plaintiff fails to meet or equal a Listing level impairment because she has a consistent full-time work record since the incident occurred in 2001. Although there can be a delayed reaction to an incident in terms of the emergence of PTSD, Dr. Peterson indicated that PTSD symptoms were evident in 2001, after the incident. Thus, Dr. Peterson testified that Plaintiff would be limited to simple tasks with no limitations, frequent but not constant detailed or complex tasks, no limitations on simple judgment and decisions, frequent but not

---

      [3]   The ALJ's decision states, in part, that "The [Plaintiff] had no treatment for the period of 2001 through 2005." (AR 11.) This would appear to be a typographical error, as the transcript of the hearing makes it clear that Plaintiff was treated by Dr. Robertson from 2001 through 2005. The question, rather, concerned a lack of treatment records for that period of time from Dr. Robertson, which was extensively discussed at the hearing between the ALJ and Plaintiff's counsel. (See AR 31.) Thus, the Court construes this quoted statement in the decision as a typographical error.

constant public contact, no limitations with supervisor and coworker contact, no working at unprotected heights or under hazardous conditions. (AR 11, 36-38.)

**A.   Applicable Law.**

  **1.   Evaluation of Treating, Examining, and Non-Examining Medical Sources.**

The Ninth Circuit has repeatedly enunciated clear standards to guide the Commissioner in the evaluation of the opinion of a treating physician. For example, in Magallanes v. Bowen, the court held that,

> "We afford greater weight to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.' Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)(Sprague). The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Rodriquez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)(Rodriquez) The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted. See Id.; Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)(Cotton)."

(881 F.2d 747, 751.)

The court in Magallanes continued that,

> "To reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must ''make findings setting forth specific, legitimate reasons

6

1       for doing so that are based on substantial evidence in the
2       record.'' Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.
3       1987)(Winans), quoting Sprague, 812 F.2d at 1230; see also
4       Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)(Murray)
5       (adopting this rule).  'The ALJ can meet this burden by
6       setting out a detailed and thorough summary of the facts and
7       conflicting clinical evidence, stating his interpretation
8       thereof, and making findings.' Cotton, 799 F.2d at 1408."
9  (881 F.2d 747, 751.)

11      This clearly articulated rule, set forth by the Circuit in its
12 Opinions in Magallanes and Cotton, has been often cited in later
13 decisions. (See, Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.
14 1995): "The ALJ may reject the opinion only if she provides clear and
15 convincing reasons that are supported by the record as a whole.";
16 Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996): "Even if the
17 treating doctor's opinion is contradicted by another doctor, the
18 Commissioner may not reject this opinion without providing 'specific
19 and legitimate reasons' supported by substantial evidence in the
20 record for so doing." (Citation omitted).)

21      Moreover, the Ninth Circuit has established specific requirements
22 in situations where the ALJ (as in this case) rejects the opinions of
23 treating physicians in favor of the opinions of non-treating, non-
24 examining, testifying medical experts. The rule is succinctly stated
25 in Morgan v. Apfel, 169 F.3d 595, 602 (9th Cir. 1999):

26          "The opinion of a nonexamining medical advisor cannot
27      by itself constitute substantial evidence that justifies the
28      rejection of the opinion of an examining or treating

7

>  physician. (citations omitted) In Gallant [Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)], we determined that 'the report of [a] nontreating, nonexamining physician, combined with the ALJ's own observation of [the] claimant's demeanor at the hearing,' did not constitute substantial evidence and, therefore, did not support the Commissioner's rejection of the examining physician's opinion that the claimant was disabled. Gallant, 753 F.2d at 1456. In Pitzer [Pitzer v. Sullivan, 908 F.2d 502 (9th Cir. 1990)], we held that the nonexamining physician's opinion 'with nothing more' did not constitute substantial evidence.
>
>  But we have consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician, based *in part* on the testimony of the nontreating, nonexamining medical advisor. [citations omitted] In Magallanes [Magallanes v. Bowen, 881 F.2d 747 (9th Cir. 1989)], evidence that supported the ALJ's determination included, among other things, testimony from the claimant that conflicted with her treating physician's opinion." [citation omitted]

(169 F.3d at 602)

Also instructive is the Ninth Circuit's discussion of this issue in Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995):

>  "Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the

8

>    nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict. Magallanes, 881 F.2d at 751.  Where, on the other hand, a nontreating source's opinion contradicts that of the treating physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only in the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. at 751, 755. See Ramirez v. Shalala, 8 F.3d 1449, 1453 (9th Cir. 1993) (applying test where ALJ relied on contradictory opinion of nonexamining medical advisor)."

(53 F.3d at 1041.)

### 2. **Development of the Record**.

The ALJ in a Social Security matter has the obligation fully and fairly to develop the record even where the Plaintiff is represented by counsel. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

It is the ALJ's obligation to develop the record further when the evidence is ambiguous or when the record is inadequate to allow for proper evaluation. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)(citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).) Generally, it is Plaintiff's burden to show that relevant evidence does exist and it was the ALJ's failure that it was not obtained. See Duenas v. Shalala, 34 F.3d 719, 722 (9th Cir. 1994).

**B.  Analysis.**

The ALJ is under the obligation to consider and resolve conflicting evidence. Certainly, here, there is conflicting evidence. Dr. Robertson's opinion assesses greater limitations than those found by the ALJ; however, the ALJ adopted, essentially, the opinions rendered by the ME, Dr. Peterson, at the hearing, which were supported by Plaintiff's treating physician, Dr. Slomin, and an examining physician, Dr. Ho.  The treating and examining physicians each relied on independent clinical examinations in rendering their conclusions. In addition, Dr. Robertson's opinion was not supported by any treatment records.  As Plaintiff's second issue, she asserts that the ALJ was under an obligation to develop the record to obtain Dr. Robertson's five years of treatment records.  There is no indication in the record that any such documents exist, and certainly, Plaintiff was represented by counsel, the matter was discussed with the ALJ and counsel, and Plaintiff never obtained such records.  Even assuming, however, that the lack of records was a significant factor in the rejection of Dr. Robertson's opinion, even if Dr. Robertson's opinion were supported by clinical records, the ALJ still was entitled to rely upon the conflicting opinions of Plaintiff's examining and treating physicians, and the opinion of the ME, who testified extensively at the hearing.  The ME, in large part, relied upon the fact that during the applicable period of 2001 through 2005, Plaintiff was usually gainfully employed in a full-time job, and even received a promotion. Dr. Peterson testified, in part, that, "The level of severity, however -- the severity of the condition of PTSD in my mind is questionable because of the work record, quite simply." (AR 34.)  Certainly, a relevant factor to consider in whether to accord credibility to Dr.

Robertson's quite extreme evaluation of Plaintiff's limitations is the fact that during this same period of time, Plaintiff was not only able to hold down full-time employment, for the most part, but improved her position with her employer. The fact that Dr. Peterson also discussed that, in his opinion, Plaintiff had not improved under Dr. Robertson's treatment is superfluous. Plaintiff correctly points out that Dr. Robertson herself indicated that Plaintiff had little improvement during the five years of treatment. At the hearing, Dr. Peterson affirmed in his testimony that even absent this factor, his opinion would not change.

For the foregoing reasons, the Court determines that the ALJ did not err in his evaluation of the opinion of Plaintiff's treating psychologist. Further, the ALJ was not under a duty to develop the record to obtain Dr. Peterson's treatment notes, if any existed. In any event, even if such a duty existed, the failure to obtain these records, for the reasons discussed, is harmless error.

**II**

**THE ALJ DID NOT ERR IN HIS CREDIBILITY ASSESSMENT**

In her third issue, Plaintiff asserts that the ALJ erred in depreciating her credibility with regard to subjective symptoms and functional limitations. (JS at 13, citing AR 27-36, 166-168.)

Plaintiff asserts that the decision fails to contain specific and legitimate reasons, as required by numerous case decisions, to depreciate her credibility. In particular, she points out the ALJ's statement that the medical evidence in the record does not establish functional limitations greater than those found in the decision. (AR at 14.)

Plaintiff contends that the law is clear in this area; to wit, that the ALJ must provide clear and convincing reasons to reject Plaintiff's testimony, that general findings are insufficient, that testimony which is not credible must be identified, and the evidence undermining the complaints must be specifically pinpointed. This statement of law is correct. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

The Court's analysis of the ALJ's decision, however, cannot be limited to one specific statement in the decision which Plaintiff has chosen to highlight. There are numerous citations in the decision to reasons supporting the ALJ's credibility assessment, which fall well within the credibility assessment factors described in the regulations. (See 20 C.F.R. §§404.1529(a); 416.929(c)(3)(2009).)

The Commissioner first points to what he describes as "Plaintiff's propensity to exaggerate her symptoms" as a reason to discount her credibility. (See JS at 15.) In and of itself, this factor, while relevant generally, is not well established in the record. For example, Plaintiff's treating physician, Dr. Slomin, referenced psychological testing which Plaintiff received from a Dr. Sculer in March of 2006, noting that Dr. Sculer found the MMPI test to be invalid based on "possible" explanations, which included "faking, bad, inadequate reading ability, confused thought process or a cry for help." (AR 251.) Clearly, faking, or exaggeration, would be only one explanation, while the others which Dr. Sculer apparently referenced certainly cannot be ascribed a pejorative meaning. Similarly, Dr. Ho, who performed a psychiatric CE in October 2006, noted that Plaintiff "appeared to exaggerate some responses on the mental status exam." (AR 189.) Again, one can fairly read some speculation into Dr. Ho's

statement.  Thus, the Court is not persuaded that exaggeration by Plaintiff, during medical examinations or psychological testing, is a valid basis upon which to detract from her credibility.  Thus, other reasons set forth in the ALJ's decision must be examined.

The ALJ did consider and rely upon Plaintiff's extensive work history after the robbery incident in 2001. (AR 13-14.)  The Court deems this to be a relevant factor, and one that is well supported by the evidence.  Plaintiff suffered a very traumatic robbery incident in 2001, and, as a result, described apparent symptoms of PTSD which affect her ability to talk, walk, complete tasks, concentrate, follow instructions, and get along with others and understand things. (AR 27-36, 166-168.)  It is fair, however, to compare this self-description of a somewhat severe mental functional limitation with the fact that for a four-year period following the robbery, Plaintiff not only was employed full time, with brief hiatuses, but was also promoted.  For this reason, the Court deems that the ALJ was entitled to rely upon Plaintiff's post-robbery employment history to discount her own statements regarding inability to perform and function on a sufficiently sophisticated level to sustain full time employment, along with a promotion.

The ALJ also considered conflicts between the objective medical records and Plaintiff's own statements, in the credibility assessment. This is, as the parties understand and acknowledge, one factor set forth in the regulations as pertinent to a credibility assessment. (See also Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989).)  Here, the ALJ assessed opinions from three medical sources - Drs. Ho, Peterson, and Slomin - in determining that Plaintiff's self-described

symptoms were not consistent with the objective medical evidence.[4]

Finally, the ALJ contrasted Plaintiff's description of her mental functional limitations with what may fairly be describes as conservative mental health treatment (here, the Court acknowledges that Plaintiff had seen mental health professionals, such as Dr. Robertson, following the incident).  This factor would not function as a "stand alone" reason, since there is some record of mental health treatment; however, it may fairly be characterized as conservative treatment in view of Plaintiff's somewhat extreme description of her limitations due to PTSD or other reasons stemming from the robbery and other incidents.

For the foregoing reasons, the Court determines that the ALJ's credibility assessment was not erroneous.

**III**

**THE ALJ HAD NO INDEPENDENT DUTY TO CONSIDER**

**SIDE EFFECTS OF PLAINTIFF'S MEDICATIONS**

In Plaintiff's fourth issue, she notes that she has been taking a series of prescribed medications; however, she asserts that the ALJ erroneously failed to discuss any possible side effects of these medications "as required by law."

The record indicates that Plaintiff never complained of any side effects from medication (AR 130), and the hearing transcript indicates that she did not make any such complaints or allegations.  While Plaintiff seems to believe that the ALJ in all cases has an

---

[4] The Court has already summarized the medical findings and opinions of these three physicians, and will therefore not repeat that discussion in this portion of its Opinion.

14

1  independent duty to assess possible side effects of medications, where
2  there is evidence that a person is taking medications which may
3  produce side effects, she is incorrect with regard to the ALJ's legal
4  obligations.  Indeed, it is Plaintiff's responsibility to raise the
5  issue, and to demonstrate what evidence there may be to support the
6  fact that medication side effects cause functional limitations.  See
7  Miller v. Heckler, 770 F.2d 847, 849 (9th Cir. 1985).  Thus, Plaintiff
8  failed to meet her burden, and the Court finds no error in the ALJ's
9  failure to address what, in this case, is a hypothetical and somewhat
10 speculative issue.
11     The decision of the ALJ will be affirmed.  The Complaint will be
12 dismissed with prejudice.
13     **IT IS SO ORDERED**.

15 DATED: September 30, 2009               /s/
                                        VICTOR B. KENTON
16                                      UNITED STATES MAGISTRATE JUDGE